UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS G. CASTEEL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:15-CV-683-SPM ) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) ) |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying the application of Plaintiff Nicholas Casteel ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9). Because I find the decision denying benefits is supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

### I.  PROCEDURAL BACKGROUND

On November 6, 2009, Plaintiff filed an application for SSI benefits, alleging that he had been unable to work since June 6, 2008, due to dystonia, bipolar disorder, depression, nerve damage in his legs, and short-term memory loss. (Tr. 149-60, 225). Plaintiff's claim was denied initially. (Tr. 90-94). Plaintiff requested a hearing before an administrative law judge (ALJ), and the ALJ found that Plaintiff was not under a disability as defined in the Act. (Tr. 14-38). On March 2, 2011, the Appeals Council denied Plaintiff's request for review. (Tr. 5-10). Plaintiff appealed to this Court, and on March 29, 2013, this Court remanded the case back to the Commissioner for

further proceedings, including a re-evaluation of the credibility of Plaintiff's subjective complaints and a re-evaluation of the opinion offered by independent medical examiner Ana Marie Soto, M.D. (Tr. 810-46). On December 4, 2013, following a second hearing, the ALJ again found that Plaintiff was not under a disability as defined in the Act. (Tr. 697-712). On February 25, 2015, the Appeals Council declined to review the case. (Tr. 682-85). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II. FACTUAL BACKGROUND[1]

At the time of the hearing before the ALJ held on September 24, 2013, Plaintiff was 26 years old and had a tenth-grade education. (Tr. 757-58). He could not remember how long it had been since he last worked. (Tr. 758). Plaintiff testified that he has not stayed at jobs long because he hears voices, because it is hard on him to be around a lot of people, and because he has weakness in his legs. (Tr. 758-59). Plaintiff lived with his mother and was able to do routine household chores; his mother helped him take care of his children. (Tr. 761-62). He testified that he was on several medications and that although they help, he still has problems. (Tr. 759).

Plaintiff's medical records dated prior to the alleged onset date show a history of dizziness, possible movement disorder, auditory processing disorder, depression, anxiety, cognitive issues, and drug and alcohol abuse. (Tr. 272-283, 317-19). During the alleged disability period, Plaintiff sought treatment for symptoms including anxiety, difficulty focusing, mood swings, difficulty being around people, delusions, hearing voices, paranoia, anger outbursts, difficulty sleeping, dizziness, and alcohol intoxication, and his treatment providers frequently adjusted his medications to try to address these symptoms. (Tr. 363, 561-65, 569, 571-72, 589-90, 593, 635, 639, 1064,

---

[1] The following is not intended to be an exhaustive summary of the medical records. The Court focuses, as do the parties, on Plaintiff's mental impairments and on the records most relevant to the issues raised in Plaintiff's brief.

2

1073, 1075, 1136, 1185, 1148-49, 1235-1270, 1293-1298, 1313-14, 1338-39, 1404-1426). At various times, his treatment providers diagnosed conditions including dystonia, bipolar affective disorder, major depressive disorder, generalized anxiety disorder, mood disorder not otherwise specified, mood disorder not otherwise specified with psychosis, alcohol abuse, polysubstance dependence, psychosis—alcoholic, schizophrenia, and schizoaffective disorder. (Tr. 364, 540, 561-63, 570-72, 590, 593, 1184-85, 1219, 1235-1270, 1293-1298, 1323, 1339, 1346, 1358, 1404-1426). He was hospitalized for his mental symptoms on several occasions. (Tr. 363, 1185, 1148, 1313, 1339). The most recent records from Plaintiff's treating psychiatrist, Dr. Sridebi Gavirneni, are from July and August 2013 and show diagnoses of major depressive order, generalized anxiety disorder, mood disorder not otherwise specified, alcohol abuse, and rule out cannabis abuse. (Tr. 1419, 1424).

The record contains several opinions from medical and psychological experts. On January 12, 2009, medical consultant Stanley Hutson, Ph.D., reviewed the record and found Plaintiff moderately limited in the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday; the ability to respond appropriately to changes in the work setting; the ability to travel in unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently of others. (Tr. 514-15). He found that Plaintiff had the ability to understand, carry out, and remember simple instructions; to respond appropriately to supervisors and co-workers in usual work situations; and to deal with routine changes in the work environment. (Tr. 516).

On February 18, 2010, clinical psychologist Dr. Joseph M. Long conducted a consultative examination of Plaintiff. (Tr. 538-40). Dr. Long noted that Plaintiff was well groomed, was alert and oriented; correctly completed a Serial 4 addition task and made one error on a Serial 7 subtraction task; had an affect that was flat and constrained with a moderately anxious quality;

made little eye contact; and showed no evidence of gross impairment of psychological functioning due to hallucinations, delusional ideation, or extreme emotional lability. (Tr. 538-39). Dr. Long found that Plaintiff had bipolar disorder by history, probable anxiety disorder, alcohol abuse in reported remission, and marijuana abuse. (Tr. 540). He opined that Plaintiff's ability to understand and remember instructions was mildly impaired, his ability to concentrate and persist with tasks was moderately impaired, and his social and adaptive functioning was moderately impaired. (Tr. 540).

On March 2, 2010, medical consultant Aine Krescheck reviewed the record and found that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 552). She found moderate limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to respond appropriately to changes in the work setting. (Tr. 541-42). She opined that Plaintiff "must avoid work involving intense or extensive interpersonal interaction, handling complaints or dissatisfied customers, close proximity to coworkers, close proximity to available controlled substances, multi-step instructions, multi-tasking activities, and public contact." (Tr. 543). She found Plaintiff capable of one- to two-step repetitive work activities. (Tr. 554).

On or around October 1, 2010, psychiatrist Dr. Ana Maria Soto conducted an examination of Plaintiff, in two sessions. (Tr. 659-666). Dr. Soto described in detail Plaintiff's medical and

social history. (Tr. 660-65). On mental status examination, Dr. Soto found that Plaintiff was overall cooperative but showed signs of distraction; had voices that seemed to be interfering with his answers; showed slow movement and production of speech; had soft, slow, hesitant, monotonous speech; had a mood that was despairing, anxious, depressed, and futile; had an affect that was constricted and almost flat; had a sense of déjà vu; had auditory hallucinations with voices talking to each other; had visual hallucinations; had a thought flow that was at times fragmented; had thought content that revealed a persecutory trend; and had severe problems in concentration. (Tr. 665). Dr. Soto found that Plaintiff's symptoms "have been developing over time, culminating in full-blown schizophrenia with an affective component, primarily depressed." (Tr. 661). Dr. Soto found Plaintiff was moderately impaired in activities of daily living; was severely impaired in social functioning; and was severely impaired in the ability to complete tasks. (Tr. 663-64). She diagnosed Plaintiff with schizoaffective disorder, depressive type; obsessive compulsive disorder; panic disorder associated with agoraphobia; borderline intellectual function; back pain; history of weakness; dystonic reaction; and possible Parkinson symptomatology. (Tr. 666). In an addendum dated January 21, 2011, she explained the nature of schizophrenia as a disease, explaining that it can involve periods of partial remission. (Tr. 668).

On May 4, 2012, medical consultant Dr. Robert Cottone, Ph.D., reviewed the medical record and found that Plaintiff could understand, remember, carry out, and persist at simple tasks; make simple work-related judgments; relate adequately to co-workers and supervisors; and adjust adequately to ordinary changes in work routine or setting. However, he also found that Plaintiff must avoid work involving intense or extensive interpersonal interaction; handling complaints or dissatisfied customers; close proximity to co-workers; and close proximity to available controlled substances. (Tr. 1292).

On September 13, 2013, orthopedic surgeon Dr. Anthony Francis, M.D., testified at the hearing before the ALJ that he had reviewed Plaintiff's records, that most of Plaintiff's issues were psychological, and that Plaintiff could perform at least sedentary work. (Tr. 731-32).

Also on September 13, 2013, clinical psychologist Dr. James Reid reviewed the record and testified at the hearing before the ALJ. (Tr. 734-35). He opined that Plaintiff's impairments equaled Listing 12.09 (substance addiction disorders), Listing 12.04 (depressive syndrome), and Listing 12.06 (anxiety disorders). (Tr. 743). However, he also opined that if Plaintiff were clean and sober, Plaintiff's impairments would not meet or equal any listed impairment. (Tr. 744). Dr. Reid opined that without substance abuse, Plaintiff would be limited to simple, routine, repetitive tasks with only limited interaction with the public, co-workers, and supervisors; and would have moderate limitations in the ability to deal with changes in workplace routine. (Tr. 745-46).

### III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 416.920(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to

other work, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

Where drug addiction or alcoholism is present, the ALJ must first follow the above five-step approach, "without deductions for the assumed effects of substance use disorders." *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003). If the ALJ finds that the claimant would be disabled based on all of his limitations, including the effects of substance abuse disorders, then the ALJ must conduct additional analysis. The Act provides that"[a]n individual shall not be considered disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). To determine whether alcoholism or drug addiction is a contributing factor material to the determination of disability, the ALJ must "evaluate which of [the claimant's] current physical and mental limitations, upon which the [ALJ] based [the] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 416.935(b)(2). The claimant bears the burden of proving that alcoholism was not a contributing factor material to the disability determination. *Brueggemann*, 348 F.3d at 693. However, "If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and award of benefits must follow." *Id.*

8

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the date of the application for benefits; and that Plaintiff had the severe impairment(s) of cellulitis in leg with associated weakness, mood disorder, anxiety disorder, substance abuse, and depression with psychotic features. (Tr. 699-700). The ALJ then found that Plaintiff's impairments, including substance use disorders, met sections 12.04 and 12.06 of 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings"). (Tr. 700-01). However, the ALJ found that if Plaintiff stopped the substance abuse, the remaining limitations (though severe) would not meet or medically equally any of the impairments in the Listings. (Tr. 701). The ALJ found that if Plaintiff stopped the substance use, he would have the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), but could only perform work that involves simple, routine, repetitive tasks in a low stress environment defined as requiring only occasional decision-making and occasional changes in work setting; could only have occasional interaction with supervisors and co-workers; and would be limited to jobs where production quotas are only based on end of day work measurements. (Tr. 702-03). The ALJ found that Plaintiff had no past relevant work. (Tr. 710). However, relying on the testimony of a vocational expert, the ALJ found that if Plaintiff stopped the substance use, there would be a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 711). The ALJ concluded that the substance use disorder was a contributing factor material to the determination of disability, because Plaintiff would not be disabled if he stopped the substance abuse, and that therefore Plaintiff was not disabled under the Act. (Tr. 712).

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ's finding that substance abuse was a material factor to Plaintiff's disability was not supported by substantial

9

evidence; and (2) that the ALJ's finding regarding Plaintiff's RFC is not supported by substantial evidence because the ALJ disregarded the opinions of consultative examiner Dr. Soto.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)). The court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quotation marks omitted). "An ALJ's decision is not outside the zone of choice simply because [the reviewing court] might have reached a different conclusion had we been the initial finder of fact." *Id.*

### B. The ALJ's Finding that Substance Abuse Was a Factor Material to Plaintiff's Disability Is Supported by Substantial Evidence

Plaintiff's first argument is that the ALJ's finding that substance abuse was a factor material to Plaintiff's disability is not supported by substantial evidence. This requires an assessment of whether substantial evidence supports the ALJ's finding that the limitations that would remain if Plaintiff stopped using drugs and alcohol would not be disabling.

In her decision, the ALJ found that Plaintiff's impairments, including the effect of his substance use disorders, met sections 12.04 and 12.06 of the Listings. *Id.* at 700. She noted that when Plaintiff is using alcohol and marijuana, he hears voices nearly constantly; he becomes exceedingly paranoid; he is frequently hospitalized; he has significant problems with concentration and focus, and his symptoms are debilitating. (Tr. 700). However, the ALJ found that if Plaintiff stopped using alcohol and marijuana, his remaining impairments (though severe) would not meet or equal any listed impairment and would leave Plaintiff with the RFC to perform work involving simple, routine, repetitive tasks in a low stress environment (defined as requiring only occasional decision-making and occasional changes in work setting); requiring only occasional interaction with supervisors and coworkers; involving no interaction with the public; and involving jobs where production quotas are only based on end-of-day work measurements. (Tr. 701-03).

After reviewing the record, the Court finds that that there is substantial evidence in the record to support the ALJ's finding that substance abuse was a factor material to Plaintiff's disability. As the ALJ acknowledged, Plaintiff's impairments caused him significant mental symptoms throughout the relevant period, including periods when he was apparently not drinking or using drugs excessively. (Tr. 701-10). However, as the ALJ also found, Plaintiff's most severe symptoms—the need for frequent hospitalization, the nearly constant hearing of voices, and the

11

excessive paranoia—were associated with alcohol and/or drug use, whereas Plaintiff's symptoms were significantly improved during a period of sustained sobriety.[2] (Tr. 704-07).

In August 2008, Plaintiff was hospitalized for several days for having anger outbursts, voicing suicidal thoughts, and hearing voices. (Tr. 363). It was noted that he used alcohol and illicit drugs routinely, and he was diagnosed with "polysubstance abuse, psychotic disorder not otherwise specified versus substance induced psychotic disorder, and mood disorder not otherwise specified versus substance induced mood disorder." (Tr. 366, 372, 379, 384).

In April 2011, Plaintiff reported that he was drinking seventeen or more beers a night and indicated that he did not take his medication when he was drinking. (Tr. 1053-54). In July 2011, Plaintiff went to the emergency room and reported that the Italian Mafia had attacked him and was after him. (Tr. 1148). The doctor noted that he was delusional, nervous, and anxious, with a labile and inappropriate affect, tangential speech, impaired cognition, impulsivity, and inappropriate judgment. (Tr. 1149, 1151). He was transferred to another hospital, where he reported that he had gone on an alcohol binge the day before. (Tr. 1064-65, 1154). He stated that every time he drinks he becomes paranoid. (Tr. 1068). He also stated that he hears vague auditory hallucinations "only when drinking and in his house." (Tr. 1070). At the same hospital visit, Plaintiff's mother reported that during periods of increased drinking, Plaintiff had increased irritability, paranoid ideas, and vague auditory hallucinations. (Tr. 1070-71). She stated that he was stable during a two-year period of sobriety. (Tr. 1071). Plaintiff was diagnosed with "psychosis—alcoholic." (Tr. 1073, 1075). His

---

[2] It is somewhat difficult to discern from the record precisely when Plaintiff was and was not drinking, because not all records address the issue and because his reports regarding his drinking are often contradictory. For example, in April 2010, he reported having been sober for three years. (Tr. 571). However, the record shows that nineteen months earlier, in August 2008, Plaintiff had reported using drugs and alcohol routinely and notes indicate that he might have substance-induced psychotic disorder. (Tr. 366, 384). Plaintiff also reported to his treating physician in June 2011 that he had not used alcohol since his last visit on April 1, 2011, despite the fact that the record indicates that Plaintiff reported to others that he was drinking heavily during that period. (Tr. 1053-54). Although the Court has reviewed the record as a whole, its discussion is focused on those periods where Plaintiff's substance use or lack of substance use is fairly clear.

discharge instructions state, "You should stop drinking alcohol. This is contributing to your paranoia." (Tr. 1075).

In September 2011, Plaintiff was taken to the emergency room for "emotional disturbance." (Tr. 1185). He indicated that he had drunk at least a 12-pack of beer and had assaulted his father-in-law. (Tr. 1193). He described binge drinking with frequent adverse social effects. (Tr. 1185). He was diagnosed with depression and alcohol abuse. (Tr. 1184-85).

A period of documented sobriety followed between October 2011 and April 2012. During that time, Plaintiff's symptoms were significantly improved, with anxiety and mood swings but no extreme paranoia, hallucinations, or hospitalizations. (Tr. 707). On October 18, 2011, Plaintiff reported having been sober for six weeks. (Tr. 1242). He was anxious and reported that he sometimes got crabby, but his mental status examination was otherwise normal, with good eye contact, a cooperative attitude, good grooming, appropriate and cooperative behavior, spontaneous and coherent speech, an ok mood, logical thoughts, no suicidal ideations, no hallucinations, and good insight and judgment. (Tr. 1244). On November 18, 2011, Plaintiff reported that he had been sober since September. Aside from anxiety and mood swings, his mental status examination was normal. (Tr. 1242). On January 13, 2012, Plaintiff reported continuing to be sober, reported stopping Celexa because of physical side effects, reported more anxiety, and reported having good and bad days. Aside from anxiety and a "not good" mood, his mental status examination was otherwise normal. (Tr. 1240). On February 24, 2012, Plaintiff reported still having anxiety and mood swings, but said they were not bad. Aside from an anxious affect, his mental status examination was normal. (Tr. 1235). In April 2012, Plaintiff reported being sober. (Tr. 1300). He reported sleep problems, but aside from an anxious affect, his mental status examination was

normal. (Tr. 1295). He was assigned a Global Assessment of Functioning score of 55, suggesting moderate symptoms.[3] (Tr. 1300).

On June 11, 2012, Plaintiff was hospitalized after stabbing himself in the thigh. (Tr. 1313). He reported hearing voices saying bad things about him, felt the neighbors were messing with him, and had crying spells, decreased sleep, and other symptoms. (Tr. 1313-14). By that time, Plaintiff was drinking again (though he indicated that it was not "too much") and was smoking marijuana. (Tr. 1314).

On February 14, 2013, Plaintiff was again admitted to the hospital due to hearing voices that were talking about him. (Tr. 1338). The record is conflicting regarding his drinking and drug use at this time. At the hospital visit, Plaintiff denied substance abuse and said his last drink was "two 12-ounce cans of beer a while ago." (Tr. 1344). However, records from January 9, 2013, and February 10, 2013 hospital visits for chest and abdominal pain indicate ongoing alcohol use. (Tr. 1371, 1380). In addition, on March 1, 2013, Plaintiff's treating psychiatrist's diagnoses included alcohol abuse. (Tr. 1427).

In light of the above records showing that Plaintiff's most severe symptoms, including those requiring hospitalization, tended to occur during periods of significant alcohol consumption; the records from a period of sobriety showing much more limited symptoms; the statements from some of Plaintiff's treatment providers that Plaintiff's conditions were induced or worsened by his substance use; Plaintiff's own reports that drinking caused him to become more paranoid and

---

[3] The Global Assessment of Functioning ("GAF") scale is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness"; it does "not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)*, 32 (4th ed. 1994). A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

14

caused him not to take his medications; and Plaintiff's mother's report that Plaintiff's symptoms increased when he was drinking and were stable when he was sober; the Court finds that Plaintiff's medical treatment records contain support for the ALJ's finding that substance abuse was a material factor in Plaintiff's disability. That finding is also supported by the expert testimony of consulting clinical psychologist James Reid, who opined that although Plaintiff met or equaled the listed impairments for depressive syndrome and anxiety disorders when he was drinking and using drugs, he would not meet or equal any listing if he were clean and sober. (Tr. 744). Dr. Reid further opined that without substance abuse, Plaintiff would be limited to simple, routine, repetitive tasks with only limited interaction with the public, co-workers, and supervisors; and would have moderate limitations in the ability to deal with changes in workplace routine. (Tr. 745-46). The ALJ reasonably considered this evidence along with the medical record as a whole. *See Casey v. Astrue*, 503 F.3d 687, 694-95 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the state agency medical consultant] along with the medical evidence as a whole.").

The Court acknowledges that Plaintiff continued to have significant symptoms even when it does not appear that he was drinking, including anxiety, depression, and sometimes hearing voices. However, as discussed below, the record contains substantial evidence to support the ALJ's finding that those symptoms were consistent with the RFC the ALJ identified. For all of the above reasons, the ALJ's determination that Plaintiff's substance abuse was a factor material to his disability fell within the "zone of choice" and must be affirmed by this court.

### C. The RFC Is Supported by Substantial Evidence

Plaintiff's second argument is that the ALJ's finding regarding Plaintiff's RFC is not supported by substantial evidence. The only argument Plaintiff offers is that in arriving at the RFC, the ALJ should have given consultative examiner Dr. Soto's opinion more weight under the factors enumerated in 20 C.F.R. § 416.927(c).

The Court finds that substantial evidence in the record supports the ALJ's assessment of Dr. Soto's opinion and the ALJ's RFC finding. Because Dr. Soto did not treat Plaintiff, but only performed a consultative examination, her opinion is not entitled to controlling weight. *See Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011) ("A single evaluation by a nontreating psychologist is generally not entitled to controlling weight."). However, the ALJ was still required to consider this opinion in light of a number of other factors, including whether the source has examined the claimant, the relevant evidence provided in support of the opinion, the consistency of the opinion with the record as a whole, whether the opinion is related to the source's area of specialty, and other factors. 20 C.F.R. § 416.927(c).

The ALJ gave Dr. Soto's opinion "little evidentiary weight" because she found that Plaintiff's presentation at the examination with Dr. Soto was inconsistent with his presentation at other examinations and with the contemporaneous findings of Plaintiff's treating psychiatrist. (Tr. 709-10). That finding was reasonable in light of the record. For example, Dr. Soto described Plaintiff as having slow movement and production of speech, voices that interfered with his answers, speech that was soft, slow, hesitant, and monotonous; a mood that was despairing, anxious, depressed, and futile; auditory and visual hallucinations; a flow of thought that was fragmented and hallmarked by slowness in thought processing; and thought content revealing a persecutory trend. (Tr. 665). However, Plaintiff's contemporaneous reports to his treating psychiatrist do not show such symptoms. On September 10, 2010, approximately three weeks before the consultative examination, Plaintiff reported to his treating psychiatrist "not hearing voices" and having "no paranoia," just some anxiety. His speech was spontaneous, his mood was ok, his thought process was logical, he did not have hallucinations, and he was feeling better since increasing his Celexa dosage. (Tr. 639). Similarly, as the ALJ noted, on October 8, 2010, a week after the consultative examination, Plaintiff reported having "no psychosis" and indicated that his

anxiety was "still there but it is much better." His speech was spontaneous and coherent, his thought process was logical, and he had no hallucinations. (Tr. 637). Although Plaintiff did report hallucinations and/or paranoia at some other visits to his psychiatrist in 2010, those occasions corresponded with times when Plaintiff had stopped taking his medications. (Tr. 635, 641). The ALJ also noted that Plaintiff performed significantly worse on cognitive function tests for Dr. Soto than he did on similar tests for Dr. Long, eight months earlier. (Tr. 538, 600, 709-10). The ALJ reasonably found that these inconsistencies suggested some exaggeration in symptoms during Dr. Soto's examination and warranted giving her opinion less weight. (Tr. 710). *See Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.") (citations and quotation marks omitted).

Although the ALJ gave little weight to Dr. Soto's opinion, the ALJ's RFC finding is supported by other evidence in the record, including the opinions of a second consultative examiner and the opinions of several non-examining medical consultants. The ALJ gave significant weight to the opinion of Dr. Reid, who had the opportunity to review the entire medical record in 2013 and who found that (absent substance abuse), Plaintiff could perform simple, routine, and repetitive tasks with only limited interaction with the public, co-workers, and supervisors and limited changes in workplace routine. (Tr. 708-09, 746). The ALJ also gave significant weight to the opinion of consultative examiner Dr. Joseph M. Long, Ph.D., who examined Plaintiff a few months before Dr. Soto did and who found that Plaintiff's ability to understand and remember instructions was only mildly impaired, his ability to concentrate and persist with tasks was moderately impaired, and his social and adaptive functioning was moderately impaired. (Tr. 540, 709). The ALJ also gave significant weight to the opinions of the state agency medical consultants (Aine Kresheck and Robert Cottone), who opined that Plaintiff could understand, remember, carry out, and persist at

17

simple tasks but needed to avoid work involving intense or extensive personal interaction, handling complaints or dissatisfied customers, close proximity to coworkers, close proximity to available controlled substances, multi-step instructions, multi-tasking activities, and public contact. (Tr. 541, 709, 1292). In the RFC, the ALJ accounted for the limitations found by these experts by limiting Plaintiff to simple, routine, repetitive tasks in a low-stress environment, to only occasional interactions with supervisors and coworkers, to no interaction with the public. (Tr. 702-03).

For all of the above reasons, the Court finds that the ALJ's assessment of Dr. Soto's opinion and the other opinions in the record was reasonable, and that her RFC finding was supported by substantial evidence. The Court acknowledges that this case contains a great deal of medical opinion evidence and other evidence, much of it conflicting. However, "it is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). Her decision fell within the "zone of choice," and the Court cannot disturb that decision merely because a different conclusion could have been reached. *See Buckner*, 646 F.3d at 556.

### VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of September, 2016.